IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INGOMAR LIMITED PARTNERSHIP, | : CIVIL ACTION NO. 1:06-CV-1433 |
| : | |
| Plaintiff : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| JEFFREY J. CURRENT; PAULA H. : | |
| CURRENT; SELECT PORTFOLIO : | |
| SERVICING, INC., f/k/a FAIRBANKS : | |
| CAPITAL CORP.; RANDAL L. : | |
| SPAHR; and CRYSTAL C. JAMES, : | |
| : | |
| Defendants : | |

## **MEMORANDUM**

Plaintiff Ingomar Limited Partnership ("Ingomar") brings this action to vindicate its interest in properties presently and formerly owned by defendants Jeffrey and Paula Current (collectively "the Currents"). In 1999, the Currents mortgaged adjacent properties in Perry County, Pennsylvania, granting Ingomar's predecessor in interest a lien on both parcels. Four years later, the Currents received a satisfaction piece that they believed discharged the mortgage lien as to both parcels, though they had not repaid the note in full. They sold one parcel to defendants Randal Spahr and Crystal James (collectively "Spahr and James"). Ingomar presently seeks to enforce the note against the Currents and to obtain a declaratory judgment that Spahr and James purchased their property subject to Ingomar's mortgage lien. It has filed a motion for summary judgment (Doc. 23) against the Currents. Spahr and James have also filed a motion for summary

judgment (Doc. 25) seeking dismissal of Ingomar's declaratory judgment action as time-barred and because they acquired their property as bona fide purchasers. For the reasons that follow, Ingomar's motion (Doc. 23) will be granted. The motion (Doc. 25) of Spahr and James will be denied.

I.   **Statement of Facts**[1]

On May 24, 1999 the Currents executed a note in the amount of $101,000, in favor of Contimortgage Corporation ("Contimortgage"), Ingomar's predecessor in interest. (Doc. 27 ¶ 1.) The note was secured by a mortgage lien on two adjacent parcels that the couple owned in Perry County, Pennsylvania. (Id.; Doc. 30-3 at 8-9.) The smaller parcel encompassed ten acres (hereinafter "the small parcel") and included the Current's residence, which had been destroyed by fire and which was to be rebuilt with the loan proceeds. (Doc. 24, Ex. 2 at 18; Doc. 27 ¶ 1.) The larger unimproved parcel consisted for forty-five acres (hereinafter "the large parcel"). (Doc. 27 ¶ 1) The mortgage lien includes separate legal descriptions of each property along with their respective tax parcel identification numbers. (Doc. 30-3 at

---

[1] The Currents did not file a brief in opposition or a responsive statement of material facts to Ingomar's motion for summary judgment. The facts as presented in Ingomar's statement of material facts (Doc. 27) are therefore deemed admitted. See (Doc. 34); L.R. 56.1 ("All material facts set forth in the statement [of] the moving party will be deemed to be admitted unless controverted by the statement [of] the opposing party.").

Ingomar has contested the motion (Doc. 25) filed by Spahr and James. In light of the applicable standard of review, the court will present the facts in the light most favorable to Ingomar, the non-moving party, with respect to this motion. See infra Part II.

8-9.)  The small parcel appears as number 260-034-00-064, and the large parcel is described as number 260-034-00-063.  (Id.)

Based on loan negotiations, the Currents believed that the mortgage lien attached only to the small parcel despite the identification of both properties in the mortgage.  (Doc. 24, Ex. 2 at 20.)  Jeffrey Current testified that he and his wife did not wish to encumber the large parcel, and they assumed that the mortgage documents reflected that request.  (Id.)  The Currents discovered that the mortgage lien attached to both parcels in 2003 when they applied for a loan to construct a new home on the large parcel.  (Doc. 24, Ex. 2 at 20-21; Doc. 27 ¶ 9.)  Jeffrey Current contacted Contimortgage and was transferred to Alta Real Estate Services ("Alta"), which was managing Contimortgage's assets during the its bankruptcy proceedings.  (Doc. 27 ¶ 10.)  He explained the situation to an Alta representative, who told him that Alta "would take care of it."  (Doc. 24, Ex. 2 at 16, 21; Doc. 27 ¶ 11-12.)

Several weeks later, the Currents received a copy of a satisfaction piece bearing the tax parcel identification number for the large parcel and stating that the "Mortgage has been fully paid or otherwise discharged and that upon the recording hereof said Mortgage shall be and is hereby fully and forever satisfied and discharged."  (Doc. 24, Ex. 8.)  The postal address used for both the small and large parcels appears in the satisfaction piece and is the same address that appears

3

in the note executed by the Currents.[2]  (See Doc. 24, Ex. 1 at Note p. 1; Doc. 27 ¶ 13.) The mortgage lien contains no address.  (See Doc. 30-3.)  The satisfaction piece incorrectly referenced the deed book and page number at which the Current's mortgage was recorded.  (Compare Doc. 24, Ex. 8, with Doc. 30-3.)

The Currents ceased making payments on the note upon receiving the satisfaction piece because they believed that it released the mortgage on both parcels and extinguished their obligations under the note.  (Doc. 27 ¶ 22.)  Their most recent monthly payment was credited on September 5, 2003, after which the note's outstanding principal balance was $97,523.36.  (Id.; Doc. 24, Ex. 10 at 6.)  Jeffrey Current testified that he and his wife ceased payments because they believed that Contimortgage had "written off" the note as a component of its

---

[2]Both parcels used the same address when the Currents executed the note and mortgage lien because the large parcel was undeveloped.  (Doc. 24, Ex. 2 at 23.)

bankruptcy proceedings.³  (Doc. 24, Ex. 2 at 49.)  He provided no explanation for why he believed that a bankrupt entity would "writ[e] off" its legal right to receive incoming loan payments, but he acknowledged that such conduct was atypical of creditors.⁴  (Id. at 62.)  Paula Current testified that upon receiving the satisfaction piece, her reaction was: "Wow, cool."  She admitted that it was strange for a

---

³Jeffrey Current described his reaction upon receiving the satisfaction piece as follows:

> Q. [W]hen you received this satisfaction piece, you assumed it was for the 10-acre parcel?
> A. But it was for the mortgage, that they removed it from the 45[-]acre and satisfied—satisfied the mortgage.
> Q. . . . [B]ut you understood at that time that you hadn't paid off the mortgage.  Correct?
> A. Right.
> Q. Didn't that strike you as odd, that you were now getting a satisfaction piece that says that the mortgage was satisfied even though you knew you hadn't paid it off?
> A. No.  We assumed that since they were under bankruptcy that they wrote it off or whatever.

(Doc. 24, Ex. 2 at 27-28.)

⁴Jeffrey Current testified that, in his experience, a bank would not typically release a debt without receiving repayment in full:

> Q. Outside of this immediate lawsuit, the property, the 10 acres, were you ever the recipient of a loan that the bank did not want paid back?
> A. No.
> Q. Does that sound typical, that a bank would lend upwards of $100,000 and then not want payment back?
> A. No. They would want it back.

(Doc. 24, Ex. 2 at 62.)

5

mortgagee to release a mortgage lien unilaterally without receiving repayment of the entire balance of the indebtedness.[5]  (Doc. 24, Ex. 3 at 39-41.)

Neither Contimortgage nor the subsequent holders of the note informed the Currents that the note had been forgiven.  (Doc. 24, Ex. 2 at 49; Doc. 27 ¶ 21.)  To the contrary, the Currents received notice as early as December 2003 that Contimortgage expected repayment of the note.  Around that time, Countrywide Home Loans, Inc. ("Countrywide"), which Contimortgage retained to service its loans, contacted the Currents regarding their lapse in payments and sent them a foreclosure notice.  (Doc. 24, Ex. 2 at 55.)[6]

On September 26, 2003, the Currents sold the small parcel to Spahr and James and used the $155,000 in proceeds to build a new home on the large parcel.

---

[5]Paula Current testified as follows:

Q. [W]hat did you think when you heard that the mortgage was satisfied?
A. Wow, cool.

\* \* \*

Q. . . . Did it strike you as strange that Contimortgage would satisfy your mortgage and not expect payment?
A. I guess you could call it strange.

(Doc. 24, Ex. 3 at 39-41.)

[6]Countrywide's record of contacts with the Currents, which Spahr and James have introduced in support of their motion for summary judgment, reveal that Countrywide notified the Currents as early as October 17, 2003 of their lapse in repayment under the note.  (Doc. 25-3 at 7.)  Countrywide attempted to discuss their repayment obligations on at least twenty-five separate occasions from October through December 2003.  (Id. at 7-10.)  On six of those occasions, the Currents either hung up the telephone or failed to return messages.  (Id.)  They repeatedly advised Countrywide that they refused to make any further payments on the note because it had been satisfied.  (Doc. 25-3 at 7-8; Doc. 26 ¶¶ 18-19; Doc. 31 ¶¶18-19.)

6

(Doc. 24, Ex. 11; Doc. 27 ¶¶ 23-24.)  Spahr and James arranged for a title search before purchasing the small parcel.  (Doc. 26 ¶ 10; Doc. 31 ¶ 10.)  The title search located the mortgage lien and the satisfaction piece.[7]  (Doc. 25-2 at 3.)  The Currents never disclosed to Spahr and James that they had failed to satisfy the note in full.  (Doc. 26 ¶ 12; Doc. 31 ¶ 12.)

On November 17, 2003, an amended satisfaction piece was recorded that corrected the reference to the deed book and page where the Currents' mortgage was recorded.  (Doc. 25-4 at 5.)  A revocation of the satisfaction piece followed on July 23, 2004 and stated that the mortgage had not been satisfied and had been released in error.  (Doc. 24, Ex. 9.)  Ingomar acquired the Currents' note and mortgage in April 2006 after a series of ownership transfers.  It instituted the present action three months later.  (Doc. 26 ¶ 24; Doc. 31 ¶ 24; see also Doc. 1.)

Ingomar's complaint advances breach of contract and unjust enrichment claims against the Currents arising from their non-payment of the note, and it seeks declaratory judgment against Spahr and James establishing that the small parcel

---

[7]Ingomar denies the paragraph of Spahr and James' statement of material facts stipulating that the title search produced the satisfaction piece.  (See Doc. 26 ¶ 11; Doc. 31 ¶ 11.)  Ingomar's responsive statement of material facts, however, does not dispute Spahr and James' awareness of the satisfaction piece but contends that they were not entitled to rely on it as a release of the mortgage lien on the small parcel.  Moreover, Spahr and James' title search documents list the recorded mortgage followed by the letters "S.P." and the number 20030965, after which the photocopy in the record deteriorates.  This is identical to the instrument number of the satisfaction piece, except that the recorded instrument has one additional digit, bearing the number 200309657.  The court finds that this evidence demonstrates (for purposes of the pending motion) that Spahr and James had notice of both the mortgage and the settlement piece at the time they purchased the small parcel.

remains encumbered by the mortgage lien.[8]  Ingomar moves for summary judgment on the contract claims against the Currents, who have not contested the motion. Spahr and James move for summary judgment on Ingomar's declaratory judgment claim, contending that it is time-barred and that their status as bona fide purchasers extinguishes the mortgage lien.  The parties have fully briefed these issues, which are now ripe for disposition.

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

---

[8]Ingomar also advances claims for negligence and tortious interference with business relations against defendant Select Portfolio Servicing, whose predecessor in interest allegedly recorded the incorrect satisfaction piece.  These claims are not subject to the pending motions for summary judgment.

## III.   Discussion

Ingomar moves for summary judgment on the contract claims against the Currents.  Spahr and James seek entry of summary judgment in their favor on Ingomar's declaratory judgment claim to establish that the small parcel is subject to the mortgage lien.  These claims are founded upon state law and appear before the court via diversity jurisdiction.  See 28 U.S.C. § 1332(a).  As such, the court will apply Pennsylvania law in adjudicating the rights of the parties.  See Norfolk S. Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91-92 (3d Cir. 2008).

### A.   Breach of Contract Claims against the Currents

A mortgage lien creates an obligation enforceable in rem against the encumbered property while the accompanying note creates an obligation actionable in personam against the debtor.  See Kondratick v. Beneficial Consumer Disc. Co., No. Civ. A. 04-4895, 2005 WL 2314042, at *8 (E.D. Pa. Sept. 21, 2005) (quoting Meritor Sav. Bank v. Peppertree Assocs., No. Civ. A. 90-2137, 1991 WL 91562, at *2 (E.D. Pa. May 29, 1991) ("[A] creditor whose interest is secured by a mortgage and a note may institute an action in rem to foreclose on the mortgage, or it may institute an in personam action on the note.").  Hence, a creditor faced with an unsatisfied mortgage may recover amounts owed either through a foreclosure action against the mortgaged premises (in rem) or an action against the debtor (in personam).  Courtney v. Ryan Homes, Inc., 497 A.2d 928, 942 (Pa. Super. Ct. 1985).  The two proceedings are "separate and distinct," and a creditor's inability to recover in rem does not affect its alternative right to proceed in personam.  Sams

9

Corp. v. Garin, 507 A.2d 402, 404 (Pa. Super. Ct. 1986); see also In re Washington, No. Civ. A. 06-1625, 2007 WL 846658, at *7-8 (E.D. Pa. 2007) (reversing decision of bankruptcy court, which had held that an action based exclusively on a mortgage lien precluded a subsequent action on the accompanying note, and remanding to the bankruptcy court for further consideration of the distinction between the two forms of action); Kondratick, 2005 WL 2314042, at *8-9 (holding that debtor could not defend a creditor's claim to enforce a note by invoking the creditor's breach of mortgage lien provisions because provisions of the lien had no effect on the creditor's rights under the note); First Wisconsin Trust Co. v. Strausser, 653 A.2d 688, 693 n.4 (Pa. Super. Ct. 1995) ("[A]n action on a promissory note and an action in foreclosure are two different actions.").

Under Pennsylvania law, a recorded satisfaction piece serves as evidence that the debtor has fully satisfied the note and that the creditor has released the mortgage lien. See 21 PA. STAT. ANN. § 721-4 ("The satisfaction piece when recorded shall forever thereafter discharge, defeat and release the lien and debt of the mortgage."); see also id. § 681. "Satisfaction of a mortgage, while prima facie evidence of payment, is not conclusive," and a satisfaction piece will be ineffective to discharge a debtor's obligations if it was erroneously recorded. Alliance Funding Co. v. Stahl, 829 A.2d 1179, 1181 (Pa. Super. Ct. 2003). To obtain relief from an improvidently filed satisfaction piece, the plaintiff-creditor need only "'prove that the defendants were not entitled to have the mortgage satisfied.'" Id. (quoting St. Clement's Bldg. & Loan Ass'n v. McCann, 190 A. 393, 394 (1937)). Upon such proof,

the creditor may proceed either in rem against the property or in personam against the debtor.  A prima facie case to enforce an unpaid mortgage note in personam requires the plaintiff to establish "the execution and delivery of the [note] and its nonpayment." Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1056 (Pa. Super. Ct. 1999) (quoting Phila. Workingmen's Sav. Loan & Bldg. Ass'n v. Wurzel, 49 A.2d 22, 27 (Pa. 1946)) (alteration in original).

In the present case, Ingomar's predecessor in interest recorded the satisfaction piece to release the mortgage lien from the large parcel.  The satisfaction piece represented that the mortgage lien was released after full satisfaction of the note.  Approximately $97,000 of the note's principal remained unpaid notwithstanding the satisfaction piece.  Hence, to the extent that the satisfaction piece represented that the Currents had completed payment on the note, it was recorded in error.  The Currents acknowledge that they knew of this error yet ceased repayment.

Moreover, the Currents' conduct overwhelmingly demonstrates a pattern of opportunistic chicanery for the purpose of monetary aggrandizement at the expense of their mortgage lender.  The Currents contacted Contimortgage for the exclusive purpose of removing the mortgage lien from the large parcel.  Neither the lien on the small parcel nor the note were implicated by this discussion. Nevertheless, the Currents ceased payment upon receipt of the satisfaction piece. A scant six weeks later they sold the small parcel to Spahr and James, using the proceeds to build a $200,000 home on the large parcel.  Countrywide's efforts to

notify them of their outstanding debt had no effect on their sophistic contention that they were excused from the note's legal obligations. The outstanding debt—of which the Currents possessed full awareness—prevents the satisfaction piece from discharging the note, and Ingomar is entitled to recover from them in personam for unpaid amounts it. Accordingly, the court will grant Ingomar's motion for summary judgment against the Currents.

Ingomar is entitled to recover the note's outstanding principal balance, accrued interest, and late charges. (See Doc. 24, Ex. 1 at Note ¶¶ 1, 2, 6(A)). Under the provisions of the note, it may also recover costs and expenses of enforcing the note conditioned upon a properly served notice of default demanding full payment. (See id. ¶ 6(C), (E)). The record currently valuates damages through April 27, 2007, (see Doc. 24, Ex. 12.), but omits the notice of default received by the Currents and an itemized calculation of costs and expenses. The court will instruct Ingomar to file additional documentation to update its damages through April 11, 2008. Ingomar will also be instructed to provide the court with the notice of default—presumably served by its predecessor in interest—and with an itemized list costs and expenses. Upon receipt of this information, the court will either fix the value of judgment or set the case for trial on damages as appropriate.

**B.     Continued Validity of the Lien on Spahr and James' Property**

Defendants Spahr and James advance two grounds for summary judgment with respect to Ingomar's claim for declaratory relief. First, they argue that Ingomar's claim is rooted in negligence law, rendering it time-barred by the

12

applicable the two-year statute of limitations. Second, they contend that they are bona fide purchasers of the small parcel, thereby extinguishing Ingomar's lien.

### 1. Statute of Limitations

Declaratory judgment actions have no uniformly applicable limitations period. See 28 U.S.C. §§ 2201-02; Algrant v. Evergreen Valley Nurseries, LP, 126 F.3d 178, (3d Cir. 1997). They are instead governed by the time-bar rules applicable to the underlying substantive rights. Hence, declaratory judgment proceedings seeking relief at law must be filed within the statute of limitations applicable to a claim asserting legal rights underlying the declaratory judgment action. See Algrant, 126 F.3d at 184-85 ("[W]hen plaintiff's claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action.").

An action adjudicating the validity and effect of a lien on real property is equitable in nature. See A-1 Discount Co. v. Nardi, 735 A.2d 121, 123 (Pa. Super. Ct. 1999) (observing that equity provided appropriate forum for relief from erroneous release of a judgment lien on debtor's real property); see also Stahl, 829 A.2d at 1181 (citing McCann, 190 A. at 394) ("Equity affords relief where an encumbrance has been discharged through a mistake). Statutes of limitations have no effect on equitable claims. See 42 PA. CONS. STAT. § 5501(c) (stating that statutes of limitations do not apply to equitable claims, which are governed by "the principles of waiver, laches and estoppel and similar principles"). Hence, an action seeking

declaratory relief to establish real property rights is not governed by a limitations period but by the equitable doctrine of laches.

In the present case, Ingomar's seeks declaratory judgment against Spahr and James establishing that the mortgage lien executed by the Currents was satisfied in error and remains attached to the small parcel. (See Doc. 1 ¶ 25.) Ingomar has not alleged, nor does it seek recovery for, negligence committed by Spahr and James.[9] The claim for declaratory relief is therefore a proceeding in equity implicating no

---

[9]Spahr and James attempt to gild Ingomar's equitable claim in the language of negligence. They posit that the instant action hinges upon their alleged failure to perform a reasonable title search of the small parcel. Damage to the validity Ingomar's lien allegedly resulted from this negligence and is time-barred by the applicable two-year limitations period. (Doc. 29 at 10.) It is axiomatic that any negligence claim requires the breach of a duty. Spahr and James assume that their relationship to Ingomar implicates a legal duty with regard to their title search. This assumption, however, is fallacious because it implies that purchasers of property have a duty to apprise themselves of prior interests *for the purpose of protecting the prior-interest holder*. Such a duty is wholly unsupported by the law of either torts or real property. Rather, the prior-interest holder has an obligation to record its interests to protect them *against subsequent purchasers*. See Long John Silver's v. Fiore, 386 A.2d 569, 573 (Pa. Super Ct. 1978) ("If the subsequent purchaser has notice of [and earlier] agreement of sale or deed, . . . his title is subject to the interest vested in [an earlier] purchaser.") The act of recording places subsequent purchasers on notice of the interest regardless of the adequacy of the title search they perform. See id. Negligence doctrine has no bearing on the relationship between the prior-interest holder and the purchaser because the purchaser's neglect when searching a title does not vitiate properly recorded prior interests. See 21 PA. STAT. ANN. § 357 ("The legal effect of the recording of . . . agreements shall be to give constructive notice to subsequent purchasers . . . of the granting of such rights or privileges . . ., and the rights of the subsequent purchasers . . . shall be limited thereby . . . .). Spahr and James have cited no authority for their supposition that they owed a duty to Ingomar with respect to their title search, and the court's independent research has produced none. Therefore, the statute of limitations governing negligence claims is simply not germane to Ingomar's claim for declaratory relief.

14

legal remedies under tort law.  The statute of limitations applicable to negligence claims has no effect on the action, and Spahr and James' motion will be denied to the extent predicated upon a limitations defense.[10]

### 2. Spahr and James' Status as Bona Fide Purchasers

Spahr and James next contend that their status as bona fide purchasers of the small parcel preempts Ingomar's lien on the property.  A buyer of property qualifies as a bona fide purchaser if the buyer "pay[s] valuable consideration, ha[s] no notice of the outstanding rights of others, and act[s] in good faith." Poffenberger v. Goldstein, 776 A.2d 1037, 1042 (Pa. Commw. Ct. 2001).  A buyer who qualifies as a bona fide purchaser receives title to the property unencumbered by any previously existing interests.  See Leedom v. Spano, 647 A.2d 221, 228 (Pa. Super. Ct. 1994) ("Since [the buyers] paid for their property without knowledge of . . . defects in the title they assert they are entitled to unencumbered title as bona fide purchasers for value.").

A buyer may receive notice of "the outstanding rights of others" through two methods.  Id.  First, proper recordation of an interest places subsequent buyers on constructive notice of prior interests, preventing them from attaining status as bona fide purchasers.  21 PA. STAT. ANN. § 357; Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d 1348, 1353-54 (Pa. Super. Ct. 1992) (quoting Lund v. Heinrick, 189 A.2d 581, 584

---

[10]Spahr and James have not raised the doctrine of laches as a potential bar to Ingomar's claim.  The court therefore declines to consider its applicability to the present case.

15

(Pa. 1963)) ("Constructive knowledge means 'what [a subsequent purchaser] could have learned by inquiry of the person in possession and of others who . . . knew of facts which might affect the title, and also by what appeared in the appropriate indexes in the office of the recorder of deeds. . . ."). Second, actual notice of a preexisting interest will prevent a buyer from claiming rights as a bona fide purchaser regardless of whether the interest is recorded. Id. at 1353 (quoting Lund, 189 A.2d at 584) ("In order to qualify as a bona fide purchaser for value, an innocent purchaser must take with 'neither actual nor constructive knowledge of claims of a third party . . . .'").

In the present case, the title search commissioned by Spahr and James produced the mortgage lien and the satisfaction piece releasing it despite the latter's incorrect reference to the deed book and page where the mortgage appeared. The mortgage lien granted Contimortgage a security interest in the small and large parcels, and the tax parcel identification numbers for both properties appear in the mortgage documents. The satisfaction piece contains only the tax parcel identification number for the large parcel. The discrepancy between the parcels identified in the mortgage lien and the parcel referenced in the satisfaction piece placed Spahr and James on notice of potential encumbrances to the title to the small parcel. This notice satisfies Ingomar's summary judgment burden to produce evidence supporting its right to relief, and Spahr and James are

not entitled to bona-fide-purchaser status for purposes of the present motion.[11]

Accordingly, the motion for summary judgment will be denied.

## IV. Conclusion

For the foregoing reasons, Ingomar's motion for summary judgment against the Currents will be granted. Ingomar will be directed to file supplemental documentation apprizing the amount of damages through April 11, 2008. Spahr and James' motion for summary judgment will be denied.

An appropriate order follows.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge

Dated:     March 6, 2008

---

[11] Spahr and James also argue that they lacked notice of the outstanding mortgage because they reasonably relied on their title search, which failed to inform them of it. They cite no legal authority for this position, and their argument fails because it conflates the law of real property with that of agency.

    Spahr and James hired their title insurer as an agent to research the chain of title to the small parcel. The principles of agency dictate that the negligence of an agent within the scope of the agency relationship is attributable to the principal. See Loyle v. Hertz Corp., --- A.2d ----, 2007 WL 4555201, at *4 (Pa. Super. Ct. 2007). To the extent that the title insurer failed to investigate a potential preexisting interest, the omission is imputed to Spahr and James as principals in the agency relationship. Neither the sufficiency of the title search nor their lack of conscious knowledge of Ingomar's prior interest has any effect on the ability of the satisfaction piece to alert them to its potential existence. They cannot invoke their reliance on the title search as a defense to Ingomar's equitable action to vindicate its lien on the small parcel. Notwithstanding the foregoing, Spahr and James may have a right of action against their title insurer for its failure to discover Ingomar's prior interest, and the court expresses no opinion on the viability of such a claim.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INGOMAR LIMITED PARTNERSHIP,** : | CIVIL ACTION NO. 1:06-CV-1433 |
| : | |
| : | **(Judge Conner)** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **JEFFREY J. CURRENT; PAULA H.** : | |
| **CURRENT; SELECT PORTFOLIO** : | |
| **SERVICING, INC., f/k/a FAIRBANKS** : | |
| **CAPITAL CORP.; RANDAL L.** : | |
| **SPAHR; and CRYSTAL C. JAMES,** : | |
| : | |
| **Defendants** : | |

## **ORDER**

AND NOW, this 6th day of March, 2008, upon consideration of the motions for summary judgment (Docs. 23, 25), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 23) of plaintiff Ingomar Limited Partnership ("Ingomar") is GRANTED.

2. On or before March 20, 2008, counsel for Ingomar shall file documentation calculating the total amount of its damages through and including April 11, 2008. This documentation shall include at least the following:

    a. Documentation reflecting the currently outstanding principal and noting any change in the amount thereof since Ingomar filed its motion for summary judgment.

    b. A calculation all accrued interest through April 11, 2008. This documentation shall specify the amount of interest that has accrued each month since defendants Jeffrey Current and Paula Current ("the Currents") ceased payments on the note.

      c.     A calculation of all late fees through April 11, 2008. This documentation shall specify the amount of late fees incurred each month since the Currents ceased payments on the note.

      d.     A copy of the notice of default, if any, transmitted to the Currents along with proof of the means by which it was sent.

      e.     A itemized list of all costs, fees, and expenses sought by Ingomar. Recurring expenses that are similar in nature shall be catalogued by their periodic accruals. Legal fees shall be enumerated by date and task performed and accompanied by the number of billable hours and rate applied to each task.

3. The Currents shall be permitted to file, on or before April 3, 2008, a memorandum in opposition to the amount of damages requested by Ingomar.

4. Ingomar shall be permitted to file, on or before April 9, 2008, a reply to any such opposition.

5. Upon completion of the filings described in Paragraphs 2-4, the court may enter judgment, require filing of further documentation, or set the case for trial on damages as is appropriate.

6. The motion for summary judgment (Doc. 25) of defendants Randal Spahr and Chrystal James is DENIED.

7. A revised pretrial and trial schedule will issue by future order of court.


          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge